## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

**DAVID S. MOYER,**

**DEBTOR.**

CASE NO.  04-53693-NPO

CHAPTER 7


**DAVID S. MOYER**

VS.

**COURTNEY A. SCHLOEMER**

PLAINTIFF

ADV. PROC. NO.  09-05055-NPO

DEFENDANT


**MEMORANDUM OPINION ON (1) COMPLAINT SEEKING
DECLARATORY RELIEF DETERMINING THE DEFENDANT'S ESTOPPEL
TO ASSERT NON DISCHARGEABILITY OF CERTAIN DEBTS, OR IN THE
ALTERNATIVE, TO ADJUDICATE THE DISCHARGE OF SUPPORT
OBLIGATIONS UNDER 11 U.S.C. SECTION 523(a)(5) AND (15); (2) MOTION
FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT; AND (3) MOTION TO STRIKE AND FOR SANCTIONS**

There came on for trial on September 15, 2010 (the "Trial"), in the above-referenced

adversary proceeding (the "Second Adversary"), the Complaint Seeking Declaratory Relief

Determining the Defendant's Estoppel to Assert Non Dischargeability of Certain Debts, or in the

Alternative, to Adjudicate the Discharge of Support Obligations under 11 U.S.C. Section 523(a)(5)

and (15) (the "Complaint") (Adv. Dkt. No. 1) filed by the Debtor, David S. Moyer ("Moyer"), and

the Answer and Objections to Complaint Seeking Declaratory Relief (the "Answer") (Adv. Dkt. No.

16) filed by Courtney A. Schloemer ("Schloemer").

In addition, there are before the Court the Motion for Judgment on the Pleadings or, in the

Alternative, Motion for Summary Judgment (the "Rule 12(c)/Rule 56 Motion") (Adv. Dkt. No. 123) filed by Schloemer and the Response to Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment (the "Response to Rule 12(c)/Rule 56 Motion") (Adv. Dkt. No. 132) filed by Moyer.  Also pending is the Motion to Strike and for Sanctions (Adv. Dkt. No. 133) filed by Moyer.

At Trial, Schloemer, who is a licensed attorney, represented herself, and Nicholas Van Wiser represented Moyer, who is also a licensed attorney.  At issue in this Second Adversary is whether certain marital debts undertaken by Moyer as part of an agreement incident to his divorce are in the nature of alimony, maintenance, or support.  If so, they are non-dischargeable under 11 U.S.C. § 523(a)(5).[1]

The Court[2] has considered the pleadings, evidence, arguments of counsel, briefs, and the law and finds that the marital debts in question were discharged in Moyer's bankruptcy.  In addition, the Court finds that the Rule 12(c)/Rule 56 Motion should be denied and that the Motion to Strike and for Sanctions should be denied.[3]

---

[1] Moyer filed his voluntary petition for relief before amendments to 11 U.S.C. § 523 became effective pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 215(1)(A) 119 Stat. 23, 54 (2005). For the pre-BAPCPA version of 11 U.S.C. § 523(a)(5), see supra note 10. Unless specifically noted otherwise, all code sections will hereinafter refer to the pre-BAPCPA version of the United States Bankruptcy Code located at Title 11 of the United States Code.

[2] Originally, this case was assigned to The Honorable Edward R. Gaines, United States Bankruptcy Judge.  The case was reassigned to the undersigned judge on May 4, 2009, after Judge Gaines became ill.

[3] Pursuant to Fed. R. Civ. P. 52, as made applicable by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

## Procedural Background

1.     On December 22, 2003, a Final Judgment of Divorce–Irreconcilable Differences (the "Judgment") rendered by the Chancery Court of Madison County, Mississippi ("Madison County Chancery Court") dissolved the marriage of Moyer and Schloemer on the grounds of irreconcilable differences  (Moyer's Ex. 1).   The Judgment incorporated by reference a Property Settlement Agreement (the "Agreement") executed by Moyer on August 4, 2003, and later by Schloemer on October 6, 2003  (Moyer's Ex. 1).

### The Commencement of Moyer's Bankruptcy Case

2.     Less than one year after the divorce became final, Moyer filed a voluntary petition for relief under chapter 7 on August 12, 2004 (the "Petition") (Bankr. Dkt. No. 1).[4]    In his Schedules, Moyer listed Schloemer as the holder of an unsecured, non-priority claim in the amount of $45,000 and identified her claim as "property settlement."  (Schedule F, Bankr. Dkt. No. 9).

3.     The initial deadline for Schloemer to file an adversary complaint to determine the dischargeability of the marital debts assumed by Moyer in the Agreement under § 523(a)(15),[5] or to object to Moyer's discharge under § 727(a), was January 11, 2005.[6]  See 11 U.S.C. § 523(c); Fed.

---

[4] Citations to the record are as follows: (1) citations to docket entries in the main bankruptcy case, Case No. 04-53693-NPO, are cited as "(Bankr. Dkt. No. ____)": (2) citations to docket entries in this adversary proceeding, Case No. 09-05055-NPO (the "Second Adversary"), are cited as "(Adv. Dkt. No. ____)"; and (3) citations to docket entries in adversary proceeding number 07-05028-ERG (the "First Adversary"), are cited as "(Case No. 07-05028-ERG, Adv. Dkt. No. ____)".

[5] For the pre-BAPCPA version of § 523(a)(15), see supra note 11.

[6] In a chapter 7 case, the time within which to object to the debtor's discharge under § 727(a) is sixty (60) days from the date first set for the debtor's meeting of creditors under § 341.  Fed. R. Bankr. P. 4004(a).  The same time frame applies to a complaint to determine the dischargeability of a debt under § 523(a)(15).  Fed. R. Bankr. P. 4007(c); see supra note 12.  The

R. Bankr. P. 4004(a), 4007(c).

**Extensions of Time to File an Adversary Proceeding**

4.      Upon motion of her counsel, Robert Gambrell ("Gambrell"), an agreed order was entered on February 11, 2005, granting Schloemer an additional sixty (60) days, or until April 12, 2005, to file an adversary complaint to determine the dischargeability of the marital debts owed by Moyer in the Agreement under § 523(a)(5) and § 523(a)(15) and an objection to Moyer's discharge under § 727 (Bankr. Dkt. No. 14).  The extension delayed the entry of a discharge order.[7]

5.      On January 24, 2006, another agreed order was entered granting Schloemer an additional sixty (60) days, or until March 25, 2006, to file an adversary complaint under § 523(a)(5) and (a)(15) but denying her request for additional time to initiate an adversary proceeding to object to Moyer's discharge under  § 727 (the "Second Agreed Order") (Bankr. Dkt. No. 40).  The Second Agreed Order was the result of negotiations between counsel for the parties, which resulted in Gambrell agreeing to forego any more extensions and to abandon Schloemer's objection to Moyer's discharge under § 727 (Schloemer's Ex. 32, at 21-22).

6.      On March 24, 2006, the deadline established by the Second Agreed Order for filing an adversary complaint, Gambrell filed a Motion to Withdraw as Counsel (Bankr. Dkt. No. 46) and a third Motion to Extend Deadline to File Complaint to Determine Dischargeability of Debt Pursuant

---

United States trustee must set the § 341 meeting no later than forty (40) days after the order for relief is entered.  Fed. R. Bankr. P. 2003(a).  The § 341 meeting in Moyer's bankruptcy case was set on November 12, 2004 (Bankr. Dkt. No. 10).

[7] In a chapter 7 case, the earliest a debtor may receive a discharge under § 727 is when the time to object to discharge has expired, and no adversary complaint has been filed.  Fed. R. Bankr. P. 4004(c).

to §§ 523(a)(5) and 523(a)(15) (the "Motion for Third Extension") (Bankr. Dkt. No. 44).

7.      On March 28, 2006, Schloemer, acting *pro se*, filed an Emergency Motion for Relief (the "Emergency Motion") (Bankr. Dkt. No. 47) seeking an extension of time for an additional sixty (60) days to file an objection to discharge and a complaint to determine the dischargeability of debt.

8.      On April 7, 2006, an Entry of Appearance and Substitution of Counsel (Bankr. Dkt. No. 59) was filed identifying Beverly D. Poole ("Poole") as Schloemer's new attorney of record.

9.      On April 25, 2006, an Agreed Order Substituting Counsel was entered, which authorized Gambrell to withdraw, and Poole to appear as her new attorney of record[8] (Bankr. Dkt. No. 62).

**Denial of Request for Third Extension**

10.     After a protracted hearing held on September 26, 2006, an order was entered denying the Motion for Third Extension and dismissing as untimely the Emergency Motion (the "Order Denying Third Extension") (Bankr. Dkt. No. 80).

11.     On March 7, 2007, Moyer was discharged from all pre-petition debts under § 727,[9] except as provided in § 523 (the "Discharge Order") (Bankr. Dkt. No. 106), and his bankruptcy case

_____

[8] On July 31, 2007, an order was entered allowing Poole to withdraw as Schloemer's attorney of record.  (Bankr. Dkt. No. 124).

[9] Section 727 provides in relevant part:

Except as provided in section 523 of this title, a discharge under subsection (1) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter. . . .

11 U.S.C. § 727.  A discharge acts as an automatic and permanent injunction against a creditor's attempts to recover any discharged debt.  11 U.S.C. § 524(a).

was closed (Bankr. Dkt. No. 107).

### Relief Sought by Schloemer in the Madison County Chancery Court

12.     On May 14, 2007, Schloemer filed in the Madison County Chancery Court a Motion to Cite Defendant for Contempt or Alternatively for Modification of Final Judgment of Divorce–Irreconcilable Differences (the "Contempt and Modification Motion") (Schloemer's Ex. 3).  Schloemer alleged in her Contempt and Modification Motion that Moyer failed to pay certain marital debts he had assumed in the Agreement, that the automatic stay provisions of the Bankruptcy Code prevented her from filing a contempt action against Moyer, that she was unsuccessful in fighting the discharge of these debts in bankruptcy court "due to [Schloemer's] technical failure to comply with certain bankruptcy deadlines" (Schloemer's Ex. 3, at 6), and that Moyer "was allowed to discharge all of the . . . obligations in his Chapter 7 bankruptcy" (Schloemer's Ex. 3, at 4). Schloemer asked the Madison County Chancery Court to hold Moyer in contempt of court for failing to pay certain marital debts and to incarcerate him in jail for his conduct.  In the alternative, Schloemer asked the Madison County Chancery Court to modify the Agreement by awarding her permanent periodic alimony, if it determined that Moyer's obligations "have been effectively discharged in his Chapter 7 bankruptcy proceeding"  (Schloemer's Ex. 3, at 5).

### Removal of Contempt and Modification Motion

13.     On June 21, 2007, Moyer filed a Notice of Removal, removing the Contempt and Modification Motion from the Madison County Chancery Court to the United States District Court for the Southern District of Mississippi (the "District Court") (Schloemer's Ex. 8).

**The First Reopening of Moyer's Bankruptcy Case**

14.     On July 31, 2007, an order was entered reopening Moyer's bankruptcy case for the limited purpose of allowing Moyer to prosecute Schloemer for violating the discharge injunction under § 524(a)(2) (Bankr. Dkt. No. 123). The District Court entered an order referring the Contempt and Modification Motion to this Court on August 6, 2007 (Schloemer's Ex. 10).

**The First Adversary**

15.     The Contempt and Modification Motion filed in the Madison County Chancery Court was removed to District Court and then was referred to this Court (the "First Adversary") (Case No. 07-05028-ERG, Adv. Dkt. No. 1).

**Remand of the Contempt and Modification Motion**

16.     On September 4, 2007, Schloemer filed Plaintiff's Motion to Remand or in the Alternative Motion to Abstain (Case No. 07-05028-ERG, Adv. Dkt. No. 10). Schloemer described her Contempt and Modification Motion as an action seeking a declaration from the Madison County Chancery Court that certain provisions in the Agreement constituted non-dischargeable support obligations under § 523(a)(5). She asked the Court to remand the action based upon principles of mandatory or permissive abstention. 28 U.S.C. § 1334(c)(1)-(2).

17.     After hearings held on January 23, 2008, April 2, 2008, and May 21, 2008, an order was entered on May 30, 2008, remanding the Contempt and Modification Motion to the Madison County Chancery Court pursuant to 28 U.S.C. § 1452(b) for resolution (the "Remand Order") (Case No. 07-05028-ERG, Adv. Dkt. No. 24).

18.     Moyer's bankruptcy case was closed for the second time on October 22, 2008 (Bankr. Dkt. No. 130).

**A Brief Return to the Madison County Chancery Court**

19.     The Madison County Chancery Court set the Contempt and Modification Motion for a two-day trial on April 6-7, 2009.  After a pre-trial conference, Moyer filed on March 26, 2009, a Motion in Limine in which he sought to exclude any evidence offered by Schloemer to prove that the marital debts Moyer agreed to pay in the Agreement were in the nature of alimony, maintenance, or support (Schloemer's Ex. 6). Moyer argued that the Madison County Chancery Court was precluded from determining whether these debts were non-dischargeable by the doctrine of *res judicata* and the discharge injunction.  The Madison County Chancery Court denied the Motion in Limine on April 3, 2009 (Schloemer's Ex. 7).

**An Appeal to the Mississippi Supreme Court**

20.     Seeking interlocutory review of the denial of the Motion in Limine, Moyer filed a Petition for Interlocutory Appeal and Stay of Proceedings in the Mississippi Supreme Court on May 1, 2009 (Schloemer's Ex. 15).

**Moyer's Second Return to Bankruptcy Court**

21.     On the same date Moyer appealed the Madison County Chancery Court's denial of his Motion in Limine, Moyer filed his second Motion to Reopen his bankruptcy case "to commence a new adversary proceeding for violating the permanent injunction of 11 U.S.C. § 524(a)(2)" (Bankr. Dkt. No. 133).

22.     Schloemer filed the Creditor's Objection to Debtor's Motion to Reopen on May 8, 2009 (Bankr. Dkt. No. 135).

**The Dismissal of Moyer's Appeal**

23.     On May 27, 2009, the Mississippi Supreme Court dismissed Moyer's appeal of the denial of the Motion in Limine as untimely and remanded the case to the Madison County Chancery Court (Schloemer's Ex. 16).

**The Second Reopening of Moyer's Bankruptcy Case**

24.     After a hearing held on June 24, 2009, this Court granted Moyer's second Motion to Reopen on the condition that Moyer initiate an action within the jurisdiction of the bankruptcy court or his case would be closed without further order (Bankr. Dkt. No. 140).

**The Second Adversary**

25.     On July 23, 2009, Moyer initiated the Second Adversary seeking a declaratory judgment that the marital debts he owed Schloemer in the Agreement were discharged in his bankruptcy case. In his Complaint, Moyer alleged that the deadline for determining whether any of the obligations in the Agreement were non-dischargeable under § 523(a)(5) and § 523(a)(15) had expired. In the alternative, Moyer sought a declaratory judgment that the marital debts in the Agreement were discharged.

26.     Schloemer filed a Creditor's Motion to Dismiss Debtor's Complaint Seeking Declaratory Relief (the "Dismissal Motion") (Adv. Dkt. No. 4) on August 24, 2009, on the ground that the Remand Order barred the Complaint by the doctrine of *res judicata*. After a hearing, the Court denied Schloemer's Dismissal Motion on September 24, 2009 (Adv. Dkt. No. 10).

27.     Schloemer filed her Answer on October 28, 2009.

28.     On August 16, 2010, just weeks before Trial, Schloemer filed the Rule 12(c)/Rule 56 Motion. Schloemer argued that because this Court abstained from hearing the First Adversary,

the doctrine of the law of the case required this Court to abstain from hearing the Second Adversary.

29.     On August 23, 2010, Moyer filed the Response to Rule 12(c)/Rule 56 Motion in which he pointed out that this Second Adversary was not removed from the Madison County Chancery Court but was initiated in this Court. Moyer argued that the abstention doctrine did not apply in the absence of removal.

30.     Concurrent with the Response to Rule 12(c)/Rule 56 Motion, Moyer filed the Motion to Strike and for Sanctions, asking that the Rule 12(c)/Rule 56 Motion be stricken because of Schloemer's failure to comply with certain procedural requirements.

31.     Before Trial, a dispute arose as to which party bore the burden of proof. The Court resolved the issue in the Order Establishing Burden of Proof at Trial ("Burden of Proof Order") (Adv. Dkt. No. 143) entered on September 3, 2010.

32.     Moyer filed a Memorandum Brief on September 3, 2010 (Adv. Dkt. No. 144); Schloemer filed the Defendant's Trial Brief ("Schloemer's Trial Brief") on September 8, 2010 (Adv. Dkt. No. 147).

33.     The parties submitted a joint Pretrial Order (Adv. Dkt. No. 150) on September 14, 2010.

34.     Because the briefing deadline for the Rule 12(c)/Rule 56 Motion extended beyond the date of Trial, the Court gave the parties an opportunity to submit additional matters in support of their respective positions after Trial, but both parties declined. See Miss. Bankr. L.R. 7012-1, 7056-1.

### Discussion

Before addressing Schloemer's contention that the debts in question were excepted from

discharge under § 523(a)(5), the Court considers, in turn, the jurisdictional and preclusion issues raised by the parties, and the applicable burden of proof.  Lastly, the Court considers the Motion to Strike and for Sanctions and the Rule 12(c)/Rule 56 Motion.

### A.    Jurisdiction

Although the parties do not dispute that this Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334, Schloemer disagrees with Moyer about whether this matter is a core or non-core proceeding under 28 U.S.C. § 157.  Section 157(b) grants bankruptcy judges the power to determine "all core proceedings arising under title 11, or arising in a case under title 11."  28 U.S.C. § 157(b).  As to those matters that are not core proceedings, but that are otherwise related to a bankruptcy case, 28 U.S.C. § 157(c) grants bankruptcy judges the limited power "to submit proposed findings of fact and conclusions of law to the district court," subject to *do novo* review by the district judge.  28 U.S.C. 157(c).  Because the core versus non-core classification determines the boundaries of this Court's judicial role, the Court must resolve this dispute as a preliminary matter.

Schloemer maintains that this matter is a non-core proceeding because her causes of action to set the Judgment aside and modify Moyer's obligations to her in the Agreement, as articulated in her Contempt and Modification Motion, existed pre-petition, invoke no substantive right provided by the Bankruptcy Code but are based solely on domestic relations law in Mississippi, and arise outside the context of Moyer's bankruptcy case.  (Schloemer's Trial Brief ¶ 3).  Moyer, on the other hand, contends that this is a core proceeding and that Schloemer's argument is her barely concealed attempt to revisit the abstention issues she unsuccessfully raised in her Dismissal Motion.

Schloemer bases her argument on the guidelines provided by the United States Court of

Appeals for the Fifth Circuit in Wood v. Wood (In re Wood), 825 F.2d 90 (5th Cir. 1987), for determining whether a proceeding is core: "We hold, therefore, that a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Id. at 97. Schloemer's reliance on Wood is misplaced: unlike the First Adversary where the Contempt and Modification Motion was the centerpiece, the Second Adversary clearly concerns a substantive right created by federal bankruptcy law. The issue presented here is one that is very familiar to bankruptcy courts: the dischargeability of obligations arising out of a divorce. Indeed, § 157(b)(2)(I) provides as an example in its nonexclusive list of core proceedings "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). Undoubtedly, such determinations can have a profound effect upon a debtor's fresh start and for that reason are an integral part of any bankruptcy case.

Schloemer's argument confuses the role of bankruptcy courts in matters of domestic relations. In an irreconcilable differences divorce, the duties of a chancery court in Mississippi are to divide marital property equitably and award alimony, if appropriate. Ferguson v. Ferguson, 639 So. 2d 921, 928 (Miss. 1994). In a chapter 7 case, the bankruptcy court's function is to oversee the marshaling, liquidation, and equitable distribution of the assets of the bankruptcy estate, and to enforce the discharge injunction. In that latter regard, a primary purpose of bankruptcy law is to provide the "honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing" debt. Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). Protecting a debtor's fresh start requires balancing bankruptcy law against the competing interests of family law when the debts in question arise out of a divorce. See Swate v. Hartwell (In re Swate), 99 F.3d 1282, 1290 (5th Cir. 1996) (noting existence of competing

policy considerations).   However, bankruptcy courts are frequently called upon to weigh the dischareability of marital debts.  As one court aptly stated: "Applying § 523(a)(5) has become a common exercise for the bankruptcy courts.  To assess its applicability in this case involves a trek over well-trod ground."  Dressler v. Dressler (In re Dressler), 194 B.R. 290, 295 (Bankr. D.R.I. 1996).

The Court agrees with Schloemer that it lacks jurisdiction to create or modify obligations arising out of a divorce, and for that reason, it is beyond the permissible scope of this Second Adversary for this Court to determine, for example, whether the Judgment should be set aside and whether Schloemer should receive more alimony than the amount set forth in the Agreement.  See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (noting that federal courts have no jurisdiction over suits for divorce or the allowance of alimony).  Those issues, however, are not properly before this Court, notwithstanding Schloemer's concerted efforts to insinuate them into this matter.  Instead, the sole issue before the Court is the dischargeability of the obligations as they exist in the Agreement.  Clearly, this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**B.      Preclusion Issue**

After an extensive hearing, the Order Denying Third Extension was entered denying Schloemer additional time to file an adversary complaint during Moyer's bankruptcy case.  At Trial, both parties agreed that Schloemer's failure to initiate an adversary proceeding within the time limit set by the bankruptcy rules to contest the discharge of Moyer's property settlement obligations under § 523(a)(15) barred her from invoking that same statute in this Second Adversary.  In his Complaint, Moyer also alleged that the Order Denying Third Extension barred Schloemer from opposing the discharge of his support obligations under § 523(a)(5) because Schloemer contractually consented

to a deadline in the Second Agreed Order that she failed to meet.  Although Moyer's counsel did not

mention the doctrine of collateral estoppel until questioned by the Court at the end of Trial, he

indicated that he had not abandoned the issue.  The preclusive effect of the Order Denying Third

Extension thus warrants further discussion.

In general, an individual's debts are dischargeable in bankruptcy but there are exceptions to

that rule, which are enumerated in § 523.  Two of those exceptions relate to debts incurred in

connection with a divorce.  In particular, debts owed by the debtor to his former spouse that arose

under a divorce decree and are in the nature of alimony, maintenance, or support are non-

dischargeable under § 523(a)(5).[10]  All other marital debts are non-dischargeable under § 523(a)(15)[11]

---

[10] The pre-BAPCPA version of § 523(a)(5) provides in relevant part that:

(a)    A discharge . . . does not discharge an individual debtor from any debt–

* * *

(5)    to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–

* * *

(B)    such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or  support.

11 U.S.C. § 523(a)(5).

[11] The pre-BAPCPA version of § 523(a)(15) provides that a discharge does not discharge an individual debtor from any debt:

(15)    not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless–

only if paying the debts would reduce the debtor's income below that necessary for the support of the debtor and his dependents, or if the benefit to the debtor from a discharge would outweigh the harm to the non-debtor spouse. Thus, unlike § 523(a)(5), § 523(a)(15) requires the Court to review the impact of the obligations on the current circumstances of the parties and the consequences of the discharge of those obligations on both parties. See Sheffield v. Sheffield, 349 B.R. 484, 492-93 (Bankr. N.D. Miss. 2006).

If the debt is clearly in the nature of alimony, maintenance, or support, however, the inquiry ends there without reaching § 523(a)(15) because the debt is excepted from discharge under § 523(a)(5). See Whipple v. Fulton (In re Fulton), 236 B.R. 626 (Bankr. E.D. Tex. 1999). Otherwise, any marital debt that is not a support-type debt must fall within § 523(a)(15) in order to be excepted from discharge. Gamble v. Gamble (In re Gamble), 143 F.3d 223, 226 (5th Cir. 1998). In this way, § 523(a)(15) functions as a safety net to prevent a marital debt that survives § 523(a)(5) from being unjustly discharged. The result of these two statutory provisions is a distinction between "support" obligations, which are dischargeable, and "property settlement" obligations, which may or may not be dischargeable.

---

(A)     the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B)     discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15).

There is another important distinction. Claims under § 523(a)(15) can be raised only in a bankruptcy court and if raised, must be filed in a timely fashion before the close of the debtor's bankruptcy case. <u>See</u> 11 U.S.C. § 523(c); Fed. R. Bankr. P. 4007.[12] Thus, if the issue is not resolved in a timely manner during the debtor's bankruptcy case, a general order of discharge at the close of the bankruptcy case discharges the debtor from all property settlement obligations arising in a divorce, and the issue is permanently waived. <u>See</u> 11 U.S.C. § 523(c)(1) (listing § 523(a)(15) as dischargeability claim that is waived if not raised in a timely fashion before the debtor's bankruptcy case is closed). By contrast, claims under § 523(a)(5) can be raised at any time without leave of the court, ostensibly because support obligations do not require a judicial determination to render them non-dischargeable. <u>See</u> <u>Dixon v. Dixon (In re Dixon)</u>, 280 B.R. 755, 758 (Bankr. M.D. Ga. 2002). A determination becomes necessary only when dischargeability as to a particular debt is contested. In such circumstances, the non-debtor spouse retains the right to raise the issue of dischargeability under § 523(a)(5) at any time, even after the bankruptcy case is closed and dismissed, and after the

---

[12] Rule 4007 specifies the timing of determinations as to the dischargeability of debts and states as follows:

(a)     Persons Entitled To File Complaint. A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt.

(b)     Time for Commencing Proceeding Other Than Under § 523(c) of the Code. A complaint . . . may be filed at any time.

(c)     Time for Filing Complaint Under § 523(c) in a Chapter 7 Liquidation . . . . A complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). . . . On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired.

Fed. R. Bankr. P. 4007.

debtor's other obligations have been discharged.  See Fed. R. Bankr. P. 4007(b).

Moyer alleges that a different result follows here, namely that Schloemer is collaterally estopped from relying upon § 523(a)(5) in defense of his declaratory judgment action.  Although Moyer agrees that the merits of the issue under § 523(a)(5)–whether any of the marital debts are "in the nature of alimony, maintenance, or support"–have never been adjudicated either by this Court or  the Madison County Chancery Court, he insists that collateral estoppel nonetheless applies because Schloemer contractually agreed to a deadline in the Second Agreed Order that she failed to meet.

Notably, the focus of the hearing that led to the Order Denying Third Extension by Judge Gaines, before whom Moyer's bankruptcy case then was pending,[13] was almost entirely on § 523(a)(15).  Although at the end of that hearing, the parties understood that the Court would no longer delay the entry of a discharge order, the one-page Order Denying Third Extension did not address any matter other than the extension of the deadline.  Likewise, the Second Agreed Order does not include language supporting Moyer's construction that Schloemer agreed to modify the limitations period applicable to § 523(a)(5).  See Thornburg v. Lynch (In re Thornburg), 277 B.R. 719, 726 (E.D. Tex. 2002) ("An Agreed Order is a contract and its interpretation is governed by basic rules of contract construction.").  Indeed, it does not appear that the parties contemplated applying a different time bar to § 523(a)(5) at all.

In short, the effect of the Order Denying Third Extension was to prevent Schloemer from filing an adversary complaint during Moyer's bankruptcy case, not to prevent her from asserting § 523(a)(5) in response to a declaratory judgment action initiated by the Debtor after entry of the

---

[13] See supra note 2.

Discharge Order. See, e.g., Classic Auto Refinishing, Inc. v. Marino (In re Marino), 181 F.3d 1142 (9th Cir. 1999) (dismissal with prejudice of creditor's untimely non-dischargeability complaint in the context of a chapter 11 case did not have res judicata effect in "newborn" chapter 7 proceeding). Under these circumstances, applying collateral estoppel as urged by Moyer would be both unfair and contrary to common sense.

### C.    Burden of Proof Standard

Because of the manner in which the Trial unfolded, the allocation of the burden of proof is determinative of the sole issue before this Court. For that reason, the standard warrants discussion here, despite the Court having addressed it in the Burden of Proof Order.

Courts have consistently held that the burden of proof[14] in proceedings where a party seeks a determination of nondischargeability under § 523(a)(5) rests on the party who opposes the discharge of a debt. See Collier Family Law & the Bankruptcy Code ¶ 6.07[4] (2010); Benich v. Benich (In re Benich), 811 F.2d 943, 945 (5th Cir. 1987) (holding that the burden of proof under § 523(a)(5) is on the person who asserts nondischargeability). This is because federal bankruptcy law favors the discharge of debt in order to provide the debtor with an opportunity for a fresh start. 4 Collier on Bankruptcy ¶ 523.05 (16th ed. 2010). As explained by the Fifth Circuit in Fezler ex rel. Estate of Fezler v. Davis (In re Davis), 194 F.3d 570 (5th Cir. 1999), "[e]xceptions to discharge should be construed in favor of debtors in accordance with the principle that provisions dealing with this subject are remedial in nature and are designed to give a fresh start to debtors unhampered by pre-existing financial burdens." Id. at 573. Accordingly, the Court ruled in the Burden of Proof

---

[14] As explained in the Burden of Proof Order, the Court uses the term "burden of proof" to mean the party having the burden of persuasion.

Order that the burden of proof as to the non-dischargeability of the marital debts in question rested on Schloemer. In doing so, the Court rejected Schloemer's argument that because Moyer is the plaintiff in this declaratory judgment action, he carried the burden of proof. Schloemer did not provide the Court with any cases supporting her view that a declaratory judgment action shifts the burden of proof on the plaintiff, and the Court found none. See Casini v. Graustein (In re Casini), 307 B.R. 800 (Bankr. D.N.J. 2004) (in an adversary proceeding to determine dischargeability "[w]hether the creditor is the plaintiff or defendant, the burden of proof rest[s] on the creditor and he should present his evidence first").

In sum, as the party bearing the burden of proof, Schloemer had to prove the exception to discharge by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 291 (1991) (preponderance of evidence standard applies to all discharge exceptions contained in § 523(a)); Fed. R. Bankr. P. 4005. Simply put, Schloemer had to present an amount of evidence to the Court that outweighed Moyer's evidence. Barry Russell, 2 Bankruptcy Evidence Manual § 301:58 (2009-2010). Otherwise, if the evidence were evenly balanced regarding the factors required by § 523(a)(5), Schloemer would lose.

### D. Section 523(a)(5)

#### 1. Factual Background

At the commencement of Trial, the parties stipulated that Moyer already had satisfied many of his obligations in the Agreement. As a result of the stipulations, the Trial focused upon the following obligations:

1. An obligation to pay any deductibles and medical expenses not covered by his current policy of health and hospitalization insurance up to $1,200 per year for 36 months or until Schloemer obtained employment that offered

comparable coverage, whichever came first (the "Medical Expense").

2.  An obligation to name Schloemer the sole beneficiary of a life insurance policy in the amount of $200,000, for so long as Moyer had any financial obligation to her (the "Life Insurance Debt").

3.  An obligation to pay lease payments on a 2001 Volvo automobile that would be retained and used by Schloemer until the end of the lease term (the "Volvo Debt").

4.  An obligation to pay Schloemer's student loans ($63,362) and to indemnify and hold her harmless for same (the "Student Loan").

5.  An obligation to pay credit card debt ($59,346) and to indemnify and hold Schloemer harmless for same (the "Credit Card Debt").[15]

For ease of reference, the above obligations are collectively referred to as the "Disputed Marital Debts."

Moyer provided the only testimony at Trial. Moyer explained that he assumed responsibility for the Disputed Marital Debts as payment in return for Schloemer's conveyance to him of her interest in the marital residence in Waveland, Mississippi, and all of its contents. Moyer testified that he was granted a discharge of his debts in his bankruptcy case and that Schloemer never filed an adversary complaint. Moyer's counsel introduced into evidence a copy of the Judgment, the Agreement, and the Discharge Order (Moyer's Exs. 1 & 2).

Schloemer questioned Moyer about each of the Disputed Marital Debts. As to the Medical Expense, Moyer testified as follows:

---

[15] The debts owed by Moyer to the credit card companies were discharged as to Moyer but not as to Schloemer. Her liability to these creditors remained intact. See H.R. Rep. No. 103-835, reprinted in 1994 U.S.C.C.A.N. 3340. The obligation at issue as to the Credit Card Debt between Moyer and Schloemer is Moyer's responsibility to hold Schloemer harmless for payment of these debts.

> Q.      Did you make a payment on any of my unreimbursed medical expenses in
> January of 2004?
>
> A.      I was never asked to reimburse any medical expenses.
>
> * * *
>
> Q.      Did you pay any unreimbursed medical expenses or prescription drug costs
> in February of 2004?
>
> A.      I paid everything that was presented to me to be paid.
>
> * * *
>
> Q.      Did you pay unreimbursed medical expenses or prescriptions in March of
> 2004?
>
> A.      I did not receive any claim for medical expenses in 2004.

When asked about the Life Insurance Debt, Moyer testified:

> A.      That life insurance policy that you are the beneficiary of was a benefit that I
> had when I was employed at Adams and Reese. . . . That policy was in effect
> until December 31st, 2003, maybe, well 2004, when I left Adams and Reese.
> I kept that policy active until such time . . . that it was active until some point
> in the bankruptcy case.

As to the Volvo Debt, Moyer testified as follows:

> Q.      Did you make any payments on that lease in January of '04?
>
> A.      Yes.
>
> Q.      Okay. What about February of '04?
>
> A.      I believe so.
>
> Q.      But you're not sure?
>
> A.      I think I paid it until I received notice that you voluntarily surrendered the car.
> . . . I think it was May of '04 when I found out it was voluntarily surrendered.

Moyer testified about the Student Loan, as follows:

> Q.     Did you pay any of my student loans in January of '04?
>
> A.     I don't recall.

As to the Credit Card Debt, Moyer testified: "I don't think that you were liable on any of the credit cards."

Schloemer introduced into evidence forty-eight (48) documents without objection. Forty-six (46) of the documents are pleadings filed either in this Court or in the Madison County Chancery Court, or are docket entries. The remaining two documents are transcripts of the examination of Moyer taken pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and of the hearing held on September 26, 2006, that resulted in the entry of the Order Denying Third Extension. After the admission into evidence of these documents, Schloemer rested her case. Significantly, Schloemer did not testify at Trial or introduce into evidence any documents showing the existence of, or the amounts owed, on any of the Disputed Marital Debts.

## 2.     Dischargeability of Disputed Marital Debts

The first step in any analysis of § 523(a)(5) is determining whether the marital debts in question are actually owed. Zimmer v. Zimmer (In re Zimmer), 27 B.R. 132, 134 (Bankr. S.D. Ohio 1983) (dismissing adversary complaint in absence of evidence of debt owed to former spouse). Unless this first step is met, the Court need not approach the second step, determining whether the marital debts in question are in the nature of alimony, maintenance, or support as a matter of federal law. Joseph v. J. Huey O'Toole, P.C. (In re Joseph), 16 F.3d 86, 87-88 (5th Cir. 1994).

The only extrinsic evidence presented at Trial as to the existence of the Disputed Marital Debts was Moyer's testimony. Moyer's testimony, however, credibly established that for a variety

of reasons, he was unaware of any obligation that remained to be paid Schloemer regarding the Medical Expense, the Volvo Debt, or the Credit Card Debt. Moreover, his testimony did not establish the existence of a Student Loan for which Schloemer remained responsible. On the present record, for example, it is entirely possible that the Student Loan had been deferred or forgiven because of Schloemer's health condition. Finally, Moyer admitted that he stopped paying the Life Insurance Debt, but the obligation to pay existed only so long as Moyer had a financial obligation to Schloemer, which Schloemer failed to prove.

In order to carry out her burden of proof, Schloemer could have testified that she had paid unreimbursed medical expenses, lease payments, credit card bills, or student loans. In the alternative, she could have introduced into evidence bills or statements showing amounts due on all or some of the Disputed Marital Debts. Indeed, a simple denial by her as to Moyer's testimony about what he paid or did not pay may have been sufficient to at least create a factual dispute, but her silence left his testimony unrebutted.

Despite being presented with the opportunity to testify, Schloemer's decision not to do so has limited the Court's analysis of § 523(a)(5) to Moyer's testimony and the documents introduced into evidence at Trial. The Court has reviewed the evidence and has found no proof indicating that any amounts are currently owed Schloemer on any of the Disputed Marital Debts. Because § 523 applies to the dischargeability of "debt," a debt must exist before that statute can be invoked. Accordingly, this Court need not determine which, if any, of the Disputed Marital Debts are in the nature of alimony, maintenance, or support.

The Court realizes how vexing this result may be to Schloemer, especially in light of the comparatively short time between the negotiation of the Agreement and Moyer's filing of the

Petition.  This result should not come as a surprise since Schloemer represented to the Madison County Chancery Court in the Contempt and Modification Motion, as noted previously, that Moyer "was allowed to discharge all of the . . . obligations in his Chapter 7 bankruptcy."  (Schloemer's Ex. 3, at 4).

### E.   Rule 12(c)/Rule 56 Motion

#### 1.   Judgment on the Pleadings

Most of the allegations that Schloemer asserts in the Rule 12(c)/Rule 56 Motion in support of her request that this Court enter judgment in her favor based on the pleadings, as set forth in Rule 12(c) of the Federal Rules of Civil Procedure and as made applicable to this Second Adversary by Federal Rule of Bankruptcy Procedure 7012,  consist of matters not properly before this Court, such as her allegations of fraud by Moyer against the Madison County Chancery Court.[16]  Those matters will not be addressed here.  Schloemer does raise an issue that merits brief consideration.  She seeks dismissal of the Complaint on the ground that the Remand Order bars the Court from considering this matter under the doctrine of the law of the case.  See 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478 (2d ed. 2002).  The Remand Order was entered in the First Adversary, a proceeding initiated by Moyer's removal of the Contempt and Modification Motion.  Notwithstanding Schloemer's arguments to the contrary, this Second Adversary is not a continuation of the First Adversary but a separate declaratory judgment action initiated by Moyer in this Court.  Schloemer's refusal to recognize the distinction renders her reliance on the law of the case doctrine misplaced.  For that reason alone, the Court finds that her request for judgment on the

---

[16] To the extent that Schloemer alleges that Moyer's obligations are excepted from discharge because of fraud under § 523(a)(2), the time to raise such allegations has expired. Ramos v. Compton (In re Compton), 891 F.2d 1180, 1186-87 (5th Cir. 1990).

pleadings should be denied.

### 2.   Summary Judgment

Although the Rule 12(c)/Rule 56 Motion is not a model of clarity, Schloemer apparently seeks as alternative relief that this Court enter summary judgment in her favor under Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Local Rule 7056-1 of the Uniform Local Rules of the United States Bankruptcy Court for the Northern and Southern Districts of Mississippi ("Local Rule 7056-1") required that she list and separately number each material fact upon which she sought such relief, but she failed to do so.  Local Rule 7056-1 provides that "[a]ny motion that does not comply may be denied immediately without requiring a response from the non-moving party."  Accordingly, this Court finds that Schloemer's request for summary judgment should be denied for failing to comply with the procedural requirements of Local Rule 7056-1.

### 3.   Sanctions

The denial of the Rule 12(c)/Rule 56 Motion renders the Motion to Strike and for Sanctions moot, except as to Moyer's request for sanctions against Schloemer for allegedly filing the Rule 12(c)/Rule 56 Motion in bad faith.  As to that remaining matter, Moyer failed to comply with the procedural requirements of Federal Rule of Bankruptcy Procedure 9011(c)(1)(A).  Therefore, the Court finds that the Motion to Strike and for Sanctions should be denied.

### Conclusion

For the reasons set forth above, this Court concludes that Schloemer has failed to establish by a preponderance of the evidence that any of the Disputed Marital Debts are owed to her by Moyer and, therefore, it is unnecessary for this Court to determine whether any of them had for their purpose the provision of alimony, maintenance, or support within the meaning of § 523(a)(5).

Accordingly, the Court concludes that the Disputed Marital Debts were discharged in Moyer's bankruptcy case.  The Court further concludes that the Rule 12(c)/Rule 56 Motion should be denied and the Motion to Strike and for Sanctions should be denied.

A separate final judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 7058.

SO ORDERED.